IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**EMCASCO INSURANCE COMPANY**
**and EMPLOYERS MUTUAL CASUALTY COMPANY**                                              **PLAINTIFFS**

V.                              CASE NO. 5:22-CV-5099

**NWA GROUNDS SERVICES, LLC, n/k/a**
**BLUE RIBBON GROUNDS SERVICES, LLC;**
**BELLVIEW URBAN CENTER, LLC;**
**HOFCO DEVELOPMENT, LLC;**
**BONDS EXCAVATING ENTERPRISES, INC.;**
**SJA INVESTMENT PARTNERSHIP, LLLP;**
**CHAMBORD INVESTMENTS, LLC**
**HAITHAM K. ALLEY, TRUSTEE OF**
**THE HAITHAM K. ALLEY REVOCABLE TRUST #2;**
**and ALEX CONNER BLASS**                                                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs EMCASCO Insurance Company and Employers Mutual Casualty Company's ("EMCC") joint Motion for Summary Judgment (Doc. 53).[1] For the reasons explained below, the Court finds that separate Defendant NWA Grounds Services, LLC, n/k/a Blue Ribbon Grounds Services, LLC ("NWAGS") and separate Defendant Alex Conner Blass failed to comply with the notice provisions of the insurance policies at issue in this declaratory judgment action. Since compliance was a condition precedent to coverage under both policies, the Court finds as a matter of law that EMCASCO and EMCC owe no duties to defend or indemnify NWAGS and Mr. Blass in a lawsuit pending in Benton County Circuit Court, case number 04CV-21-1129. The

---

[1] Plaintiffs filed a Brief in Support of the Motion (Doc. 54) and Statement of Facts (Doc. 55); Defendants filed a joint Response in Opposition (Doc. 59) and Amended Statement of Facts (Doc. 62); and Plaintiffs filed a Reply (Doc. 61).

1

Motion for Summary Judgment (Doc. 53) is therefore **GRANTED** on this basis.[2]

## I. BACKGROUND

The following facts are undisputed. NWAGS, a limited liability company, was a developer of a 5.8-acre property in Rogers, Arkansas. At the time NWAGS was formed, and at all times relevant to the events in this lawsuit, Mr. Blass was the sole owner and manager of the company. In early 2019, Mr. Blass, as manager of NWAGS, sought and received permission from the City of Rogers to perform cleanup and grading work on the property. Mr. Blass then hired separate Defendant Bonds Excavating Enterprises, Inc. ("Bonds"), to assist him with the work. All site work was performed either by Mr. Blass—who ran a bulldozer and a compaction roller on the premises—or by employees of Bonds, whom Mr. Blass directed and/or supervised on behalf of NWAGS.

### A. The Encroachment

In October 2019, the Rogers area was struck by a tornado, which felled trees and damaged construction equipment on NWAGS's property. Mr. Blass visited the site to take inventory of the damage. Later, acting on behalf of NWAGS, Mr. Blass directed Bonds to clean up the downed trees. In an effort to be neighborly, Mr. Blass also directed Bonds to clean up the downed trees on the adjacent property, which was owned by HOFCO Development, LLC ("HOFCO"). Mr. Blass did not seek permission from HOFCO before directing Bonds to enter onto HOFCO's land and remove trees. While performing this work, Bonds also removed some living saplings on HOFCO's property as well as a portion of a barbed wire fence that ran along the property line.

---

[2] The Motion's alternative bases for summary judgment will not be addressed.

In late October and early November 2019, Mr. Blass directed Bonds to begin excavating and grading NWAGS's property to prepare for a construction project. The grading process involved what the parties refer to as "dirt work"—leveling the surface of the land by moving dirt from higher to lower areas or bringing in extra dirt. Bonds inadvertently graded onto HOFCO's property. The total encroachment encompassed slightly over an acre of land.

Mr. Blass—and, by extension, NWAGS—had no idea the encroachment had occurred until late November or early December 2019, when Mr. Blass retained an architectural and engineering firm to resurvey the project site in anticipation of additional grading and site preparation. The engineers disclosed to Mr. Blass the full extent of the encroachment and damage to the neighboring property owned by HOFCO, and shortly after that, Mr. Blass arranged a site meeting with HOFCO's sole owner, Rhonda French.

The site meeting took place on December 4, 2019. During the meeting, Mr. Blass offered multiple plans for fixing or making amends for the encroachment—all of which were rejected by Ms. French. He even offered to buy the acre of encroached land or trade it for a piece of land he owned or controlled, but Ms. French refused. Mr. Blass testified in a deposition that "Ms. French was visibly upset in the meeting." (Doc. 53-2, p. 62). After he left the site that day, it was clear to Mr. Blass that this problem was not just going to go away. He understood "that Mrs. French didn't trust the work being done by the civil team that was working on the project at that time." *Id.* at p. 63.

Months passed, and still the parties failed to reach a settlement. Mr. Blass submitted at least six possible remediation plans to the City of Rogers, but Ms. French

3

would agree to none of them. At this point HOFCO had identified certain water retention and drainage issues on its property. HOFCO blamed NWAGS and Bonds for these issues, which further complicated the remediation efforts.

In October 2020, nearly a year after the encroachment, a second site meeting took place involving Mr. Blass (on behalf of NWAGS), an official from the City of Rogers, and at least one representative from HOFCO. It appeared to Mr. Blass that the meeting produced a general consensus about how to remediate HOFCO's property.

In February 2021, Mr. Blass suggested yet another remediation plan meant to restore pre-encroachment conditions on the property—but once again, Ms. French rejected it.

### B. The HOFCO Lawsuit

On May 19, 2021, HOFCO filed suit in Benton County Circuit Court, naming as defendants NWAGS, Bonds, and Bellview Urban Center, LLC—a partial owner of the property NWAGS was developing. The complaint accused all defendants of negligence, the creation of a nuisance* on HOFCO's property, unjust enrichment, and trespass. HOFCO demanded compensatory damages, punitive damages, and injunctive relief.

Mr. Blass became aware of HOFCO's lawsuit by June 1, 2021. He directed his attorneys to accept service of the complaint on behalf of NWAGS that day. NWAGS's answer to the complaint was filed on June 23, 2021.

Mr. Blass tendered claims against NWAGS's two insurance policies to EMCASCO and EMCC on November 4, 2021. It is undisputed this is the earliest date that EMCASCO and EMCC received notice of either the encroachment or the resulting lawsuit. Notice

4

was given approximately five months after Mr. Blass/NWAGS first became aware of HOFCO's lawsuit and twenty-three months after Mr. Blass/NWAGS's discovered the encroachment and met with Ms. French to discuss possible ways to remediate the damage.

## C. The Insurance Policies

EMCASCO issued a series of commercial general liability policies to NWAGS, including policy number 5D9-58-91-19, which was in place from November 8, 2018, through November 8, 2019, and policy number 5D9-58-91-20, which was in place from November 8, 2019, through December 1, 2020—the time-periods relevant to this lawsuit. Separately, Plaintiff EMCC issued a series of umbrella policies to NWAGS, including policy number 5J9-58-91-19, which was effective from November 8, 2018, through November 8, 2019, and policy number 5J9-58-91-20, which was effective from November 8, 2019, through December 1, 2020.

NWAGS is the named insured on all insurance policies listed above. Since NWAGS is a limited liability company, the policies state that NWAGS's members and managers are also considered insureds, but only with respect to NWAGS's business and the managers' duties to the business. As stated previously, Mr. Blass was the sole owner and manager of NWAGS from 2019 to 2021, when the events relevant to this lawsuit occurred.

The parties do not dispute that both EMCASCO's and EMCC's insurance policies contain certain conditions precedent to coverage. These conditions appear in all policies under the heading, "Duties In The Event Of Occurrence, Offense, Claim Or Suit." *See*

Doc. 2-2, p. 14; Doc. 2-3, p. 19; Doc. 2-4, p. 36; Doc. 2-5, p. 37. Under all policies, the insured "must see to it that [EMCASCO/EMCC] [is] notified as soon as practicable of an 'occurrence' or an offense" "which may result in a claim." *Id.* An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 2-2, p. 18; Doc. 2-3, p. 23; Doc. 2-4, p. 21; Doc. 2-5, p. 22). If an "occurrence" later escalates to a lawsuit, the policies require the insured to "see to it that [EMCASCO/EMCC] receive[s] written notice of the claim or 'suit' as soon as practicable" and "[i]mmediately send [EMCASCO/EMCC] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" (Doc. 2-2, p. 14; Doc. 2-3, p. 19; Doc. 2-4, p. 17; Doc. 2-5, p. 18).

NWAGS and Mr. Blass contend there is a genuine issue of material fact as to whether NWAGS provided notice to EMCASCO and EMCC "as soon as practicable"— either after the encroachment onto HOFCO's land in December 2019 or after Mr. Blass was served with HOFCO's lawsuit against NWAGS in June 2021. The policies require such notice both after an "occurrence" "which may result in a claim" and once a suit is filed. Though Mr. Blass admits that NWAGS is liable for encroaching onto HOFCO's property, he claims he had no reason to believe the encroachment constituted an "occurrence" that could result in a "claim" or "suit," per the policy language. He believed, instead, that the dispute with HOFCO would never result in a claim and would be resolved to the parties' satisfaction without resorting to insurance coverage, since NWAGS and HOFCO "engaged in numerous meetings attempting to resolve the situation and exchanged various proposed remediation plans to restore the property." (Doc. 59, p.

6

21).

Mr. Blass offers no explanation as to why he waited five months to send copies of the lawsuit papers to EMCASCO and EMCC—except that he continued to believe, throughout that time, that the lawsuit would be settled quickly and not "fully go into trial." (Doc. 53-2, p. 82).  He and NWAGS argue that reasonable jurors could disagree about whether NWAGS "[i]mmediately sen[t] [EMCASCO/EMCC] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" (Doc. 2-2, p. 14; Doc. 2-3, p. 19; Doc. 2-4, p. 17; Doc. 2-5, p. 18).  Mr. Blass also maintains that even if notice was untimely *as to NWAGS*, he should still be covered by the policies in his capacity as manager of NWAGS.  It appears HOFCO filed an amended complaint in state court on July 1, 2022, naming Mr. Blass as a defendant for the first time. Mr. Blass notified EMCASCO and EMCC of this development on July 5, a few days after the amended complaint was filed.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997).  The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).   Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)).

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.   DISCUSSION

In their Motion for Summary Judgment, EMCASCO and EMCC argue they are entitled to a declaratory judgment that they have neither a duty to defend nor a duty to indemnify NWAGS and Mr. Blass in the underlying state court action.   The duty to defend and the duty to indemnify "are distinct, independent obligations." *S. Farm Bureau Cas. Ins. Co. v. Watkins*, 2011 Ark. App. 388, 7 (2011). Insurers have a duty to defend an insured when claims are brought against the insured and the allegations show "a possibility that the injury or damage [may] fall within the policy coverage." *Kolbek v. Truck Ins. Exch.*, 2014 Ark. 108, 6 (2014). "Unlike an insurer's duty to defend, . . . the duty to indemnify turns on the actual facts and circumstances giving rise to liability in the underlying suit, and parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify." 43 Am. Jur. 2d *Insurance* § 676 (2022) (collecting cases).

Insurance contracts routinely require insureds to notify their insurers once a lawsuit is filed and/or once a dispute arises that could potentially blossom into a full-fledged

8

lawsuit.

> The notice requirement is designed to enable the insurer to investigate the accident or claim in a timely manner, to assess whether it should settle or litigate the claim, and, if litigation is determined to be the best course of action, to prepare an adequate defense on behalf of the insured. Frequently, insurance policies will require notice be given to the insurer "immediately" or "promptly," or "as soon as practicable." Occasionally, a specific time limit within which notice must be given is stated in the insurance contract. Ultimately, regardless of the time limit, courts have, by the great weight of authority, interpreted these provisions to mean reasonable notice under the circumstances, which is usually a question of fact.
>
> The duty to give notice arises when, under the circumstances, the insured has reason to know of the possibility of an impending claim, regardless of whether the insured believes that he or she is liable, or that the claim is valid. A "claim," for purposes of a notice requirement under liability insurance policies, is a demand by a third party against an insured for money damages or other relief owed.
>
> Policies will often require that the insured give notice within a specified or reasonable time after an "occurrence." Thus, whether the insured has a duty to give notice will often depend on the interpretation of the term "occurrence," an often quoted definition of which being that "the accident is sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages."

1 Samuel Williston, *A Treatise on the Law of Contracts* § 49.88 (4th ed. 1990).

Arkansas law provides that "[i]f an insurance policy treats the giving of notice of a lawsuit as a condition precedent to recovery, 'the insured must strictly comply with the notice requirement, or risk forfeiting the right to recover from the insurance company.'" *Am. Railcar Indus., Inc. v. Hartford Ins. Co. of the Midwest*, 847 F.3d 970, 973 (8th Cir. 2017) (quoting *Fireman's Fund Ins. Co. v. Care Mgmt., Inc.*, 2010 Ark. 110, 5–6 (2010)). In other words, an insured must comply with contractual conditions precedent before the insurer has any contractual duties to defend or indemnify.

9

The notice provisions in EMCASCO's and EMCC's policies are conditions precedent to recovery. No party disputes this. Furthermore, no reasonable juror could conclude that NWAGS strictly complied with these notice requirements.

An "occurrence" is clearly defined in the policies as an "accident" or "harmful condition" that may result in a claim. (Doc. 2-2, p. 18; Doc. 2-3, p. 23; Doc. 2-4, p. 21; Doc. 2-5, p. 22). Mr. Blass admitted under oath during his deposition the following relevant facts: (1) he, in carrying out his duties as manager of NWAGS, personally directed Bonds to enter HOFCO's land without permission and remove trees and a portion of fencing; (2) he personally directed Bonds to perform "grading" on NWAGS's land; (3) Bonds accidentally entered onto HOFCO's property without permission and "graded" more than an acre of land by moving dirt and bringing in extra dirt; (4) Mr. Blass met with HOFCO's sole owner on December 4, 2019, and offered multiple pathways to settlement, all of which were rejected; (5) NWAGS bore responsibility for the accident; and (6) Mr. Blass also bore responsibility for the accident in his capacity as sole owner and manager of the company. Given these undisputed facts, there is no genuine, material dispute that the encroachment qualified as an "occurrence" for which NWAGS was required to provide notice "as soon as practicable."

Mr. Blass and NWAGS believe a jury could find that notice was provided in compliance with the policies' terms. The Court disagrees. According to the undisputed timeline of events, NWAGS, by and through Mr. Blass, knew of an "occurrence" on December 4, 2019. By that date, NWAGS—through Mr. Blass—knew that an "accident" caused by NWAGS's agent had resulted in serious damage to a neighbor's property. Mr.

Blass's unsuccessful attempts at settlement lasted eighteen months and culminated in HOFCO filing a lawsuit against NWAGS to force a resolution.

An action that is "practicable" is "reasonably capable of being accomplished." *Black's Law Dictionary* 1361 (10th ed. 2014). Mr. Blass does not contend he was *incapable* of providing notice to EMCASCO and EMCC for nearly two years. He simply *decided* not to do so, and that decision has now cost his company insurance coverage.

Even if, for the sake of argument, the Court were persuaded that *before*-suit notice was a question of fact, *after*-suit notice was clearly not provided in compliance with the policies. Mr. Blass cannot explain why it was impracticable for NWAGS to provide notice of suit in June 2021—let alone for the next five months. Moreover, in view of that significant delay, no reasonable juror could find that Mr. Blass "[i]mmediately sen[t] [EMCASCO/EMCC] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" (Doc. 2-2, p. 14; Doc. 2-3, p. 19; Doc. 2-4, p. 17; Doc. 2-5, p. 18).

Therefore, as a matter of law, the Court finds that NWAGS, by and through its owner and manager Mr. Blass, failed to satisfy the notice-related conditions precedent to coverage under the insurance policies. As for Mr. Blass's argument that he, personally, is deserving of coverage because he promptly forwarded to the insurers a copy of HOFCO's amended complaint, filed in July 2022, that named him as a separate defendant, the Court again disagrees. HOFCO sued Mr. Blass in his capacity as agent/owner/manager of NWAGS, not in his personal capacity. *See* Doc. 26-1, ¶¶ 18–23. Under the policies, he would only be entitled to coverage "with respect to [his] duties

11

as [a] manager[]" and not in his personal capacity. *See* Doc. 2-2, p. 12; Doc. 2-3, p. 17; Doc. 2-4, p. 15; Doc. 2-5, p. 16. When NWAGS learned about the encroachment, it did so by and through Mr. Blass; when NWAGS made offers to HOFCO's owner to remediate the damage, Mr. Blass conveyed those offers; when NWAGS decided not to inform its insurers for nearly two years about the encroachment, it was really Mr. Blass's decision as manager of NWAGS; and when notice of suit was finally given—too late to comply with the policies' conditions—it was Mr. Blass who made that call. Accordingly, EMCASCO and EMCC owe no duty to defend or indemnify NWAGS and Mr. Blass.

## IV. CONCLUSION

**IT IS ORDERED** that Plaintiffs EMCASCO Insurance Company and Employers Mutual Casualty Company's Motion for Summary Judgment (Doc. 53) is **GRANTED**. The Court will enter a separate judgment declaring that Plaintiffs owe no duties to defend or indemnify NWAGS and Mr. Blass in connection with the claims alleged in HOFCO's lawsuit.

**IT IS SO ORDERED** on this 12th day of May, 2023.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE